UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| JOHNNY F., | : |
| | : |
|     Plaintiff, | : |
| | : |
| v. | :    CASE NO. 3:23-cv-444 (MPS) |
| | : |
| KILOLO KIJAKAZI, | : |
| COMMISSIONER OF SOCIAL | : |
| SECURITY, | : |
| | : |
|     Defendant. | : |

**RECOMMENDED RULING ON PENDING MOTIONS**

Johnny F. ("Plaintiff") appeals the final decision of the Commissioner of Social Security ("the Commissioner" or "Defendant") pursuant to 42 U.S.C. § 405(g).  The Commissioner denied Plaintiff's application for Social Security Disability Benefits in a decision dated April 14, 2022.  Plaintiff timely appealed to this Court.  Currently pending are Plaintiff's motion for an order reversing or remanding his case for a hearing (dkt. #21) and Defendant's motion to affirm the decision of the Commissioner (dkt. #22).

For the following reasons, the Court recommends that the Plaintiff's motion to remand be GRANTED and the Commissioner's motion to affirm be DENIED.

## I. Legal Standard

"A district court reviewing a final . . . decision [of the Commissioner of Social Security] pursuant to section 205(g) of the Social Security Act, 42 U.S.C § 405(g), is performing an appellate function." Zambrana v. Califano, 651 F.2d 842, 844 (2d Cir. 1981). "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, [are] conclusive . . ." 42 U.S.C. § 405(g). Accordingly, the court may not make a *de novo* determination of whether a plaintiff is disabled in reviewing a denial of disability benefits. Id.; Wagner v. Sec'y of Health and Hum. Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the court's function is to ascertain whether the Commissioner applied the correct legal principles in reaching his conclusion, and whether the decision is supported by substantial evidence. Johnson v. Bowen, 817 F.2d 983, 985 (2d Cir. 1987).

Therefore, absent legal error, this Court may not set aside the decision of the Commissioner if it is supported by substantial evidence. Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982). Further, if the Commissioner's decision is supported by substantial evidence, that decision will be sustained, even where there may also be substantial evidence to

support the plaintiff's contrary position.  Schauer v. Schweiker, 675 F.2d 55, 57 (2d Cir. 1982).

The Second Circuit Court of Appeals has defined substantial evidence as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  Williams ex rel. Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)).  Substantial evidence must be "more than a mere scintilla or a touch of proof here and there in the record."  Williams, 859 F.2d at 258.

The Social Security Act ("SSA") provides that benefits are payable to individuals who have a disability.  42 U.S.C. § 423(a)(1).  "The term 'disability' means . . . [an] inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ."  Id. § 423(d)(1)(A).  To determine whether an individual is disabled within the meaning of the SSA, the Administrative Law Judge ("ALJ") must follow a five-step evaluation process as promulgated by the Commissioner.[1]

---

[1] The five steps are as follows: (1) the Commissioner considers whether the claimant is currently engaged in substantial gainful activity; (2) if not, the Commissioner considers whether the claimant has a "severe impairment" which limits his or her mental or physical ability to do basic work activities; (3) if the claimant has a "severe impairment," the Commissioner must ask whether, based solely on the medical evidence, the claimant has an impairment listed in Appendix 1 of the regulations.  If the claimant has one of these enumerated impairments, the Commissioner will automatically consider him or her disabled

3

To be considered disabled, an individual's impairment must be "of such severity that he is not only unable to do his previous work but cannot . . . engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). "'[W]ork which exists in the national economy' means work which exists in significant numbers either in the region where such individual lives or in several regions of the country." Id.[2]

## II. Procedural History

Plaintiff filed for Social Security Disability Insurance Benefits under Title II on December 13, 2020. (R. 12).[3] Following an initial denial and then denial on reconsideration, Administrative Law Judge Ryan Alger held a hearing on March 29, 2022. Id. Following the hearing, ALJ Alger issued a written decision denying Plaintiff's application on April 14, 2022. (R.

---

without considering vocational factors such as age, education, and work experience; (4) if the impairment is not "listed" in the regulations, the Commissioner then asks whether, despite the claimant's severe impairment, he or she has the residual functional capacity to perform his or her past work; and (5) if the claimant is unable to perform his or her past work, the Commissioner then determines whether there is other work which the claimant could perform. The Commissioner bears the burden of proof on this last step, while the claimant has the burden on the first four steps. 20 C.F.R. § 416.920(a)(4)(i)-(v).

[2] The determination of whether such work exists in the national economy is made without regard to: 1) "whether such work exists in the immediate area in which [the claimant] lives"; 2) "whether a specific job vacancy exists for [the claimant]"; or 3) "whether [the claimant] would be hired if he applied for work." Id.

[3] The Court cites pages within the administrative record as "R. __."

25).  Plaintiff thereafter sought review by the Appeals Council, which was denied on February 6, 2023.  (R. 1).  Plaintiff timely filed this action seeking judicial review.  (Dkt. #21).

### III. **The ALJ's Decision**

After applying the five-step evaluation process, the ALJ concluded that the Plaintiff was not disabled within the meaning of the Social Security Act from his alleged onset date of June 30, 2019, through the date of the ALJ's decision.  (R. 25).  At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity during this period.  (R. 14).[4]  At step two, the ALJ found that Plaintiff had the following severe impairments: lumbar spine degenerative disc disease status post lumbar fusion, major depressive disorder, generalized anxiety disorder, and alcohol abuse in early remission.  (R. 15).  In making this determination, the ALJ also considered the Plaintiff's hypertension, hyperlipidemia, hepatic steatosis, and trigger finger, and concluded that these impairments are non-severe.  (R. 15-16).

At step three, the ALJ found that Plaintiff's severe impairments did not meet or medically equal the severity of a listed

---

[4] The ALJ found that the plaintiff earned $66 in the fourth quarter of 2019, and $729 in 2021.  (R. 14).  The ALJ concluded that these earnings did not rise to the level of substantial gainful activity for either year.  Id.

5

impairment in 20 C.F.R. Part 404, Subpt. P, App. 1 (20 C.F.R. 404.1520(d), 404.1525, 404.1526). (R. 16). The ALJ specifically considered Plaintiff's lumbar condition under Listing 1.15 and 1.16, but found that the record did not demonstrate the impairment-related physical limitations that satisfy this listing. Id. The ALJ also considered the Plaintiff's obesity with respect to the evaluation of the listings under SSR 19-2p, but found that no listing was met. (R. 17). Lastly, the ALJ considered Plaintiff's mental limitations under listings 12.04 and 12.06. The ALJ found that the evidence in the record did not demonstrate at least one "extreme" limitation or two "marked" limitations. Id. Therefore, the ALJ found that the "paragraph B" criteria were not satisfied. (R. 18). The ALJ also found that Plaintiff did not display significant signs or symptoms of his mental health impairment consistent with a determination that his condition caused him an inability to adapt to more than marginal adjustments in his environment. Id. Therefore, the ALJ found that the "paragraph C" criteria were not satisfied. Id.

At step four, the ALJ found Plaintiff had the residual functional capacity

> to perform light work as defined in 20 CFR 404.1567(b) except the claimant can occasionally climb ramps and stairs. The claimant can occasionally bend, stoop and crouch. The claimant can carry out and remember simple instructions. The claimant can maintain attention on

>  simple tasks with normal breaks. The claimant can handle frequent interaction with coworkers and the public. The claimant can perform up to frequent handling bilaterally.

(R. 18).

In formulating Plaintiff's residual functional capacity ("RFC"), the ALJ considered the medical opinions, objective medical evidence, other evidence, and Plaintiff's testimony. (R. 18–23). The ALJ summarized Plaintiff's testimony, stating that Plaintiff testified to a back injury from work, that he underwent a lumbar spine fusion that did not improve his back pain, and "that he could not stand or walk for more than 15 minutes." (R. 19). The ALJ also noted that Plaintiff testified that he underwent surgery for trigger finger on his left hand and anticipated surgery on his right hand, and that his pinky and ring finger locked but he was able to button buttons. Id.

After considering the evidence, the ALJ concluded that the Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms were not entirely consistent with the medical evidence and other evidence in the record. Id. The ALJ found that Plaintiff's history of lumbar spine issues began in April 2017 when he injured his back at work. Id. In May of 2019, the Plaintiff underwent an MRI which demonstrated a central disc herniation at L5-S1, and "EMG testing revealed a mild, chronic L5 radiculopathy." Id. While

7

physical examinations of the Plaintiff in July 2019 indicated normal gait, normal strength, and normal muscle tone, Plaintiff continued to endorse back pain leading to a lumbar spine fusion in August 2019.  Id.  While Plaintiff's records demonstrated some improvement in September 2019, Plaintiff fell in November and some physical examination revealed diminished sensation in the right leg, reduced lower extremity strength, antalgic gait and a positive straight leg raising test.  (R. 19-20). Beginning in December 2019, the ALJ found that the record showed that Plaintiff began demonstrating improvement, as Plaintiff was able to ambulate without an assistive device and with normal gait and strength.  (R. 20).  The ALJ found that through the rest of the relevant period, Plaintiff continued to display slightly diminished right leg strength and intermittent numbness in the right leg, but that other findings were normal and Plaintiff needed no further physical or injection therapy or surgical intervention.  Id.  The ALJ also considered Plaintiff's non-severe impairments regarding his mental health, obesity, and alcohol abuse.  (R. 21).

The ALJ considered medical opinions regarding Plaintiff's physical limitations from two State Agency medical consultants, Plaintiff's spinal surgeon Dr. Lane Spero, and consultative examiner Dr. Steven Weisman.  (R. 21-22).  In considering these opinions, the ALJ found that the State Agency medical

consultants' opinions were generally persuasive, Dr. Spero's opinion was partially persuasive, and Dr. Weisman's opinion was partially persuasive. Id. For Plaintiff's mental health limitations, the ALJ considered the opinions of the State Agency psychological consultants and consultative examiner Dr. Karen Goldfinger. (R. 22-23). The ALJ found that the State Agency psychological consultants' opinions were partially persuasive, and Dr. Goldfinger's opinion was not persuasive. Id.

Following the formulation of the RFC, the ALJ concluded that Plaintiff was unable to perform past relevant work as either a groundskeeper, job trainer, or material handler because that past work exceeds Plaintiff's RFC. (R. 23-24). At step five, the ALJ concluded that given Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that he can perform, thus finding that Plaintiff is "not disabled." (R. 24–25).

## IV. Discussion

Plaintiff argues that the ALJ erred in his evaluation of the medical evidence in the following ways: (a) by considering Dr. Spero's treatment notes as medical opinions, and not properly evaluating his actual medical opinion, (b) by minimizing the opinion of Dr. Weisman, and (c) by finding Dr. Goldfinger's opinion to be not persuasive. (Dkt. #21-1 at 15–18). Next,

9

Plaintiff argues that the ALJ misstated the longitudinal evidence of record by concluding that the Plaintiff's lumbar spine condition improved after surgery. Id. at 16. Lastly, Plaintiff argues that the ALJ formulated an unsupported RFC because the Plaintiff is not able to maintain six hours of standing and walking, and because the ALJ failed to properly consider Plaintiff's testimony regarding the pain in his hands. Id. at 19–22. Below, the Court will address Plaintiff's argument regarding the ALJ's formulation of the RFC.

> A. *The ALJ erred by formulating Plaintiff's RFC without making a credibility determination of Plaintiff's testimony regarding his hand pain.*

When an individual's impairment does not meet or equal a listed impairment, the ALJ will "make a finding [of the individual's] residual functional capacity based on all the relevant medical and other evidence in [the] case record." 20 C.F.R. § 404.1520(e). An individual's RFC is the most an individual can still do despite his or her limitations. Id. § 404.1545(a)(1). The plaintiff has the burden of establishing a diminished RFC. *See* Butts v. Barnhart, 388 F.3d 377, 383 (2d Cir. 2004). An "RFC determination must account for limitations imposed by both severe and nonsevere impairments." Parker-Grose v. Astrue, 462 F. App'x 16, 18 (2d Cir. 2012). Here, Plaintiff argues that the ALJ formulated an unsupported RFC.

10

Specifically, Plaintiff argues that he is not able to maintain six hours of standing and walking, that he cannot perform manipulative activities with his hands, and that the ALJ failed to properly consider his complaints of pain.

In his brief, Plaintiff lists the seven factors relevant to pain that an ALJ must consider: (1) daily activities, (2) location, duration, frequency, intensity of pain, (3) precipitating and aggravating factors, (4) the type, dose, effectiveness, and side effects of medications, (5) treatment, other than medications, (6) other measures used to evaluate pain, and (7) other factors.  (Dkt. #21-1 at 22) (citing 20 C.F.R. §§ 404.1529(C)(3), 416.929(C)(3)).  Although Plaintiff does not state which of these factors the ALJ failed to consider, Plaintiff states that he is limited in his activities of daily living, that he experiences pain in his back and hands with activity "after about 15 minutes of use," and his pain is alleviated with rest but has failed to respond to surgery. (Dkt. #21-1 at 22).  Plaintiff argues that "[h]ad the ALJ properly evaluated [Plaintiff's] pain...[the ALJ] would have been better equipped to compose an accurate RFC description." Id.

The factors that Plaintiff lists are those that the ALJ must use to evaluate a claimant's allegations of pain when those

11

allegations are "not substantiated by the objective medical evidence." Meadors v. Astrue, 370 F. App'x 179, 183 (2d Cir. 2010). The Second Circuit Court of Appeals has found that the regulations do not require an ALJ to "accept the claimant's subjective complaints without question." Genier v. Astrue, 606 F.3d 46, 49 (2d Cir. 2010). Instead, the ALJ "may exercise discretion in weighing the credibility of the claimant's testimony in light of the other evidence in the record." Id. The ALJ's findings regarding the severity of symptoms and evaluation of a Plaintiff's subjective complaints "are entitled to great deference and therefore can be reversed only if they are patently unreasonable." Sheila Renee H. v. Kijakazi, No. 3:21-CV-00944-TOF, 2022 WL 4181723, at *7 (D. Conn. Sept. 13, 2022) (internal citations omitted) (quoting Pietrunti v. Dir. Office of Workers' Comp. Programs, 119 F.3d 1035, 1042 (2d Cir. 1997)).

First, the Court will consider Plaintiff's arguments regarding the pain in his hands. The ALJ noted Plaintiff's testimony that his pinky and ring finger locked, but that Plaintiff testified he was able to button buttons. (R. 19). However, the ALJ's summary does not mention Plaintiff's testimony of hand pain with use. As Defendant notes, the Plaintiff does not specifically challenge the ALJ's finding that "the claimant's statements regarding the intensity, persistence

and limiting effects of the[] symptoms are not entirely consistent with the medical evidence and other evidence in the record." (R. 19; dkt. #22-1 at 12-13). However, the Plaintiff does challenge the ALJ's failure to consider his hand pain in formulating his RFC and argues that he is entitled to a rehearing for an RFC that accounts for the effects of his pain. (Dkt. #21-1 at 21–22). After reviewing the record and the ALJ decision, it does not appear that the ALJ made a credibility finding regarding Plaintiff's testimony regarding his hand pain. Plaintiff is entitled to remand on this basis.

When an ALJ concludes that a claimant's statements about the intensity, persistence, and limiting effects of symptoms are not credible without making a credibility assessment consistent with the requirements of 20 C.F.R. § 404.1529(c)(1), the ALJ has committed error. *See, e.g.*, Alison C. v. Comm'r of Soc. Sec., No. 3:22-CV-00370 (SRU), 2023 WL 2583213, at *8 (D. Conn. Mar. 21, 2023) (finding error where the ALJ concluded the plaintiff's testimony regarding symptoms was not credible without conducting a credibility assessment). The decision to reject a claimant's testimony must include "sufficient specificity to enable the [reviewing] Court to decide whether there are legitimate reasons for the ALJ's disbelief and whether [the ALJ's] decision is supported by substantial evidence." Wendy C. v. Kijakazi, No. 3:22-CV-00539-MEG, 2023 WL 2569402, at *5 (D. Conn. Mar. 20,

13

2023) (quoting Colombia B.N., Plaintiff, v. Comm'r of Soc. Sec., No. 7:21-CV-10622, 2023 WL 358599, at *6 (S.D.N.Y. Jan. 23, 2023)) (internal quotation marks omitted).

The Plaintiff testified at the hearing that his hands "get[] real, real painful at times," especially when he is "doing stuff" such as washing dishes. (R. 41). He also told the ALJ that his pinky, middle finger, and ring finger will lock up but that he can button buttons. (R. 44). He stated that he can only use his hands for motions like buttoning buttons for "less than 15 minutes." (R. 45). The Plaintiff testified that after 15 minutes he will experience really sharp pain and will try to relieve some of the stress on his hand by moving his hand and rubbing it. Id. However, the ALJ's decision does not refer to the hand pain about which Plaintiff testified during the hearing. There are three sections in the ALJ's decision where the ALJ discusses Plaintiff's hands, none of which mention Plaintiff's complaints of pain following activity or Plaintiff's statement that he must stop using his hands after about 15 minutes of use.

The first section in which the ALJ discusses Plaintiff's hands is when determining that Plaintiff's trigger finger was a non-severe impairment at step two. In that section, the ALJ detailed the Plaintiff's medical history regarding trigger

14

finger. (R. 15-16). This section, while noting that Plaintiff began complaining of pain to his physicians in May 2020 prior to receiving treatment, did not mention that Plaintiff complained of pain with activity following surgical intervention. Id. In the second section, the ALJ summarized Plaintiff's testimony, including his testimony regarding his hand, while formulating Plaintiff's RFC in step four. (R. 19). In that section, the ALJ noted that Plaintiff underwent surgery for trigger finger and was waiting for the procedure on his right hand, and that Plaintiff testified that his pinky and ring fingers locked but he was able to button buttons. Id. The ALJ's summary does not mention Plaintiff's testimony regarding the pain in his hands with activity, or that Plaintiff stops using them after about 15 minutes of use. Id. The third section which discusses Plaintiff's hands is where the ALJ discusses the consistency and supportability of Dr. Weisman's medical opinion. In that section, the ALJ notes that Dr. Weisman's manipulative limitations are not supported by the examination findings where Plaintiff could pick up coins from a flat surface, button buttons, zip zippers, and tie shoes. (R. 22). The ALJ also notes that Dr. Weisman's opinion is inconsistent with the record which demonstrated improvement in Plaintiff's trigger finger following trigger finger release. Id. In the conclusion of the RFC section, the ALJ states that Plaintiff "underwent a trigger

15

finger release procedure that was effective at improving his symptoms." (R. 23). This section does not mention Plaintiff's testimony regarding his hand pain.

The ALJ should have considered this testimony in his decision and used the factors articulated in the regulations to determine whether Plaintiff's testimony regarding his hand pain was consistent with the record. The ALJ was entitled to find that the Plaintiff's testimony regarding his hand pain was not consistent with the record, and therefore not incorporate the testimony regarding the hand pain into his RFC. However, before doing so the ALJ was required to make a credibility determination regarding this testimony. *See* Alison C., 2023 WL 2583213, at *9 (explaining that the ALJ is entitled to find plaintiff's testimony not credible, but "he must do so after engaging in a credibility analysis and explaining what weight he gave to [the plaintiff's] statements so that the reviewing court can determine whether that decision is supported by substantial evidence").

Finally, the ALJ's failure to consider the credibility of Plaintiff's testimony regarding hand pain is not harmless. During the hearing before the ALJ, the ALJ posed a hypothetical to the vocational expert ("VE") that matches the RFC determination eventually made by the ALJ, including that the

16

hypothetical individual "could perform up to **frequent** handling bilaterally." (R. 53) (emphasis added). The VE testified that the hypothetical individual could perform jobs in the national economy. Id. However, when the ALJ asked whether the hypothetical individual could still perform jobs in the national economy if the individual was limited to **occasional** handling bilaterally, the VE testified that this individual would be precluded from all jobs in the national economy. (R. 53-54). Therefore, the Court finds that the error was not harmless. *See* Pritchard v. Colvin, No. 1:13-CV-945 (DNH/CFH), 2014 WL 3534987, at *10 (N.D.N.Y. July 17, 2014) ("If a hypothetical question does not include all of a claimant's impairments, limitations and restrictions, or is otherwise inadequate, a vocational expert's response cannot constitute substantial evidence to support a conclusion of no disability."). Accordingly, the ALJ's evaluation of Plaintiff's testimony regarding hand pain could impact whether the ALJ finds Plaintiff disabled.

   *B. Remaining arguments.*

   Plaintiff also argues that the ALJ erred in his evaluation of the medical evidence, misstated the longitudinal evidence of record, and that the RFC did not account for Plaintiff's need for a sit/stand option and ability to lay down. As the undersigned recommends remand based on the ALJ's failure to

evaluate Plaintiff's testimony regarding his hand pain, the merits of Plaintiff's additional arguments need not be reached. The Court in no way suggests that these additional arguments would be sufficient to warrant remand.

### V.     Conclusion

Based on the foregoing reasons, the Court recommends that the Plaintiff's motion for an order reversing or remanding the Commissioner's decision (dkt. #21) be GRANTED and Defendant's motion for an order to affirm that decision (dkt. #22) be DENIED.

This is a recommended ruling. **Any objections to this recommended ruling must be filed with the Clerk of the Court within fourteen (14) days of being served with this order**. *See* Fed. R. Civ. P. 72(b)(2).  Failure to object within fourteen (14) days may preclude appellate review.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), & 72; D. Conn. L. Civ. R. 72.2(a); F.D.I.C. v. Hillcrest Assocs., 66 F.3d 566, 569 (2d Cir. 1995); Small v. Sec'y of Health and. H.S., 892 F.2d 15, 16 (2d Cir. 1989) (per curiam).

It is so ordered this 30th day of May 2024, at Hartford, Connecticut.

_____/s/_____
Robert A. Richardson
United States Magistrate Judge